UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


MAGNETIC WORKS, LTD,   )
a Missouri Corporation,    )
   Plaintiff,     )
          )
  vs.       )    Case No. 4:06CV507 HEA
          )
FARHAN KHAN, an individual,  )
          )
   Defendant.    )


## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on defendant's Motion to Dismiss for lack of

personal jurisdiction pursuant to Rule 12(b)(2) and (3) of the Federal Rules of Civil

Procedure, and to dismiss for improper venue pursuant to 28 U.S.C. §§ 1400(a), (b)

and 1391(b),  [#5].  For the reasons set forth below, the motion is denied without

prejudice.

On March 24, 2006, plaintiff filed a Complaint against defendant alleging

patent infringement (Count I), copyright infringement, (Count II), trademark

infringement and unfair competition under the Lanham Act, (Count III), and unfair

competition under Missouri common law, (Count IV).  Defendant moves to dismiss

for lack of personal jurisdiction.  Defendant further urges dismissal for improper

venue.  Plaintiff opposes the motion.

**Facts and Background**

Plaintiff's Complaint alleges the following: Plaintiff is a Missouri corporation with its principal place of business located at 9417 South Broadway, St. Louis, Missouri. Defendant Farhan Khan is a resident of the State of Florida and resides at 558 Carrigan Woods Trail, Oviedo, Florida.

Mailcovers is a proprietorship which is at least partially owned by Khan doing business at the URL "mailcovers.com." There is no entity registered with the Florida Secretary of State under the name "mailcovers" or "mailcovers.com." "Mailcovers.com" was registered to Khan in September 2005. "Mailcovers.com" has a place of business at 5300 McIntosh Point, Sanford, Florida.

Artistic Creations, Inc. was a Florida corporation that was incorporated in 1994 and included defendant as the registered agent. Plaintiff believes Khan was at least a partial owner and that Artistic Creations, Inc. was administratively dissolved in 1995 for failure to file the necessary corporate papers with the State of Florida.

From 1995 to the present, plaintiff alleges that Khan continued to conduct business under the name Artistic Creations. Artistic Creations' address is 5300 McIntosh Point, Sanford, Florida, and uses the same facsimile number as "mailcovers.com." Artistic Creations was assigned a booth at the Atlanta International Gift and Home Furnishings Market trade show in January 2006. Khan was distributing the product information for "mailcovers.com" at this booth. Khan

is the sole defendant, sued as "doing business as" Mailcovers.com and Artistic Creations.

Plaintiff manufactures and sells the MailWraps cover. The MailWraps cover is a removable magnetic mailbox cover that is used to cover a typical mailbox. Plaintiff sells over 200 different designs of the MailWraps cover so that a consumer can substitute different designs on a mailbox at different times.

Plaintiff owns U.S. Patent No. 4,991,769 (the '769 patent), which protects, *inter alia*, the MailWraps cover. Plaintiff also owns U.S. Trademark Registration No. 2,357,715 for the name trademark "MAILWRAPS" and U.S. Trademark Registration No. 2,357,716 for the logo and name trademark "MAIL WRAPS." It also owns and operates the website, "MailWraps.com," and its associated copyrighted content, through which plaintiff sells its MailWraps cover product line.

According to the Complaint, within the last several months, Khan has introduced an "imitation" product line which directly competes with plaintiff's MailWraps cover line products. Plaintiff claims defendant has infringed its intellectual property, and sets forth its causes of action in the Complaint.

Defendant moves to dismiss based on lack of personal jurisdiction. In support of its motion, defendant has submitted his affidavit. Plaintiff counters this affidavit with the declaration of Curtis L. Todd, Chief Executive Officer of plaintiff, in addition to various other exhibits.

## Discussion

In patent cases, the law of the Federal Circuit Court of Appeals is applied to jurisdictional questions rather than the law of the regional circuit in which the case arises when the issue is "intimately involved with the substance of the patent laws." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed.Cir. 2001). See also, *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed.Cir. 2006). To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a *prima facie* showing of personal jurisdiction over the defendant. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).[1] To evaluate whether the plaintiff has made such a showing, the court must view the evidence in the light most favorable to the plaintiff. *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.* 395 F.3d 1275, 1282-83 (Fed.Cir. 2005).

The determination whether a district court has personal jurisdiction over the defendants in a patent infringement case generally involves two inquiries. First, whether jurisdiction exists under the state long-arm statute. *See, e.g., Silent Drive, Inc.,* 326 F.3d at 1200; *Deprenyl Animal Health, Inc. v. U. of Toronto Innovations,* 297 F.3d 1343, 1349-50 (Fed.Cir. 2002); *Hildebrand v. Steck Mfg. Co.,* 279 F.3d 1351, 1354 (Fed.Cir. 2002); *Inamed,* 249 F.3d at 1359 (Fed.Cir. 2001). Second, if

---

[1] This standard is that which is utilized in this Circuit as well. See, *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

such jurisdiction exists, the exercise of jurisdiction must be consistent with the limitations of the due process clause. *See, e.g., Silent Drive,* 326 F.3d at 1201; *Inamed,* 249 F.3d at 1359-60.

"Sometimes these two inquiries coalesce into one because the reach of the state long-arm statute is the same as the limits of the due process clause, so that the state limitation "collapses into" the due process requirement. *Inamed,* 249 F.3d at 1360." *Trintec Industries, Inc.,* 395 F.3d at 1279.

Missouri courts have construed the state's long-arm statute "to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to the extent permissible under the Due Process Clause of the Fourteenth Amendment." *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000) (quoting *State v. Pinell*, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)). "Accordingly, Missouri courts have interpreted the statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." *Id.* Because Missouri's long-arm statute permits the assertion of jurisdiction over an out-of-state defendant to the extent permitted by the Due Process Clause, *Enterprise Rent-a-Car Co. v. Stowell*, 137 F.Supp. 2d 1151, 1155 (E.D. Mo. 2001), see also *Clune*, 233 F.3d at 541; *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995), the sole inquiry is whether exercising personal jurisdiction over defendant is within the embrace of federal due process standards. See *3D Systems*, 160 F.3d at 1377.

To satisfy the due process requirement, the plaintiff must demonstrate sufficient "minimum contracts" between the defendant and the forum state so "that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To maintain personal jurisdiction, a defendant's contacts with the forum must be more than "random," fortuitous," or "attenuated." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In assessing the defendant's reasonable anticipation, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Jurisdiction is proper where the contacts proximately result from actions by the defendant that create a "substantial connection" with the state. *Id.*

There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum, *i.e.*, general and specific. General jurisdiction arises where a defendant "purposefully direct[s]" his activities at residents of the forum. A court may therefore exercise jurisdiction over a defendant, who has

'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. *Inamed Corp.*, 249 F.3d at 1360. Specific jurisdiction arises when the cause of action "'arises out of or relates to' the defendant's activities with the forum state." *Id.* The use of the disjunctive "or" is significant. *Id.* at 1362.

Both categories of minimum contacts require some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, and thus invokes the benefits and protections of its laws. If a court determines that a defendant has minimum contacts with the forum state, the court must then consider whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 476; *International Shoe,* 326 U.S. at 320.

With regard to personal jurisdiction, defendant's affidavit states: that he operates a business as a sole proprietor in Sanford, Florida; that he does not have a regular and established place of business in the State of Missouri; that neither he nor his agents reside or can be found in the State of Missouri; that he does not have a place of business, mailbox,[2] telephone or agent in the State of Missouri; that he has not engaged in any transaction or exchange of information with a Missouri resident

---

[2] Query, if defendant did have a mailbox in the State of Missouri, whether the mailbox would also have a decorative cover.

through his website; his website does not permit the exchange of information but is for informational purposes; that he has not directly advertised or solicited business in the State of Missouri; that neither he nor any of his agents or employees has ever entered the State of Missouri for business purposes; that he does not have knowledge of people on the January 2006 Lawn & Garden Retailer subscription list or specifically where the magazine was distributed in the United States.

In contravention of this affidavit, Curtis Todd, Chief Executive Officer of the plaintiff has submitted his declaration. In this declaration, Todd declares: that selected pages from the Licensing Letter newsletter and from the website operated by "License! Magazine" include published announcements regarding art licensing transactions between Khan's Artistic Creations and Portersfield Fine Art Licensing-- these products include products sold by Khan's mailcovers.com website and artist names that are listed in the announcements are also listed in the mailcovers.com website; in the January 2006 issue of the Lawn and Garden Retailer, Khan advertizes his mailbox cover via mailcovers.com; the Business Publication Initial Audit Report for the six month period that ended in June, 2005 shows that Lawn and Garden Retailer Magazine is circulated to over 18,000 entities nationwide, including over 500 entities in the State of Missouri; Khan continues to advertise in the Lawn and Garden Retailer; a Vendor Agreement attached to the declaration establishes that Khan and Michael Pray & Associates entered into an agreement for

Pray to represent Khan in a four-state area of the Midwest, including Missouri; in addition to this agreement, Khan filled out a M.A.P. Supplier Information Sheet provided by Pray, on which it is checked that the line of merchandise is available for Pray's entire territory; a purchase order and invoice from Pray, representing "Artistic" to Sappington Garden Center, located in St. Louis, Missouri, shows that seventeen of Artistic Creations' items were ordered for a total of $455.87 and shipped from Florida to Sappington Garden Center in Missouri in 2003; the artisticcreationsonline.com website includes a "View My Cart" web page that can be accessed when a user provides his or her email and password information; this web page indicates that the user can "Shop Online. . ." The facsimile number listed on the website is the same number that Khan uses for the website mailcovers.com.

The record before the Court at this time establishes that defendant does not have "continuous" and "systematic" contacts with the State of Missouri to satisfy "general" minimal contacts. Although plaintiff argues that it has presented "numerous" contacts with Missouri, the record at this stage establishes a single sale from defendant through his agent that is found in a different state, defendant's advertising in a nationally distributed magazine and a website which advertises his product. These sparse interactions, if in fact they can be considered interactions with Missouri, hardly reach the required level of "continuous and systematic" contacts with Missouri.

Nor has plaintiff established a *prima facie* showing that defendant has

sufficient "specific" minimum contacts with the state to satisfy due process. The

minimum contacts inquiry for specific jurisdiction focuses on the "relationship

among the defendant, the forum and the litigation," *Keeton v. Hustler Magazine,*

*Inc.*, 465 U.S. 770, 775 (1984)(citation omitted), and requires "a substantial

connection" that "come[s] about by an action of the defendant purposefully directed

toward the forum state." *Asahi Metal Ind. Co. v. Super, Ct. of Cal.*, 480 U.S. 102,

112 (1987).

Specific jurisdiction can arise from even a single contact with the forum.

*McGee v. Int'l Life Ins. Co.*, 355 U.S./ 220, 223 (1957). The quantity of contacts is

not determinative where specific jurisdiction has been alleged. In this case, however,

there is no showing of any contact with the State of Missouri *vis a vis* the mail box

covers in issue. Although plaintiff presents the sale of certain painted mailbox

products to Sappington Garden Center, this sale occurred in late 2003 and was

shipped in January, 2004. According to the Complaint, defendant did not begin the

alleged infringement until sometime in 2006. Thus, the sale of the mailbox products

in 2003 appears unrelated to the issues herein.

Furthermore, defendant's advertizing in Lawn and Garden Retailer does not

give rise to specific jurisdiction. While Missouri residents may have access to the

advertisements and the website, defendant's action in placing an ad in a magazine

which is distributed throughout the country and maintaining a passive website which is accessible throughout the world does not establish that defendant purposely directed his actions to the forum state of Missouri, such that he could reasonably anticipate being haled into a Missouri court. *Rudzewicz*, 471 U.S. at 475; *Word-Wide Volkswagen*, 444 U.S. 297. The mere fact that defendant's website has a link to the company's email address is insufficient to establish the minimum contacts with Missouri to satisfy the standard set out for this Court to exercise jurisdiction over defendant. See *Dolphin v. Equibase*, Cause Number 4:02cv487-TCM, *aff'd,* 2003 WL 21076827 *1 (8th Cir. May 13, 2003); *Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F.Supp2d 1082, 1087-88 (E.D. Mo 2001); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349-50 (D.C. Cir. 2000).

While defendant's advertisements and website *may* be viewed by Missouri residents, the record does not show the number of times a Missouri resident has accessed the website nor is there any indication in the record that the ads were utilized by Missouri residents to purchase defendant's products. "The difficulty is that [defendant's] website is not directed at customers in [Missouri], but instead is available to all customers throughout the country who have access to the Internet. Thus, 'the ability of [Missouri] residents to access the defendant['s] website. . . does not by itself show any persistent course of conduct by the defendant[] in [Missouri].'" *Trintec*, 395 F.3d at 1281.

## Conclusion

The facts upon which plaintiff relies are too ambiguous to permit the Court to make an informed judgment at this time as to whether defendant is subject to this Court's jurisdiction. *Id.* Plaintiff has requested jurisdictional discovery in order to establish jurisdiction and the Court has granted same, in the event that a *prima facie* showing has not been sustained. The plaintiff is therefore granted 30 days within which to conduct jurisdictional discovery. Because of this discovery, the Motion to Dismiss will be denied without prejudice to refiling after this 30 day period.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss, [Doc. No. 5], is denied, without prejudice to refiling after the expiration of the said thirty day jurisdictional discovery period.

Dated this 5th day of July, 2006.

_____
    HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE